No. 1:17-cv-1588 (LPS)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

In re W. R. GRACE & CO., *et al.*, Reorganized Debtors.

UNITED STATES OF AMERICA, Appellant

v.

W. R. GRACE & CO., *et al.*, Appellee.

On Appeal from the United States Bankruptcy Court
For the District of Delaware
Chapter 11 Case No. 01-1139 (Gross, J.)

**ANSWERING BRIEF OF APPELLEE W. R. GRACE & CO.**

Roger J. Higgins
THE LAW OFFICES OF ROGER HIGGINS, LLC
1 North Bishop Street
Suite 14
Chicago, IL 60607-1823
(312) 666-0431

Adam C. Paul, P.C.
John Donley, P.C.
Natalie Keller
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000

Laura Davis Jones (Bar No. 2436)
James E. O'Neill (Bar No. 4042)
PACHULSKI STANG ZIEHL & JONES LLP
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE  19899-8705
(302) 652-4100

*Counsel for Appellee*

June 1, 2018

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Bankruptcy Procedure 8012, Reorganized Debtors-Appellees W. R. Grace & Co. *et al.* state as follows. The Reorganized Debtor-Appellee is W. R. Grace & Co. ("Grace").[1] Grace is a publicly held Delaware corporation that owns 100% of the stock of W. R. Grace & Co.-Conn., a Connecticut corporation, a reorganized debtor, the chapter 11 case of which is now closed. No publicly held company owns more than 10% of Grace's stock. Grace is not aware of any publicly held corporation that is not a party to the proceeding before this Court and has a financial interest in the outcome of the proceeding.

---

[1] Capitalized terms not defined herein shall have the meaning ascribed to them in the *Motion for Entry of an Order Enforcing Plan and Confirmation Order Against Internal Revenue Service*, filed April 12, 2017 [Docket no. 32584] (the "Interest Rate Determination Motion").

# TABLE OF CONTENTS

Statement of Issue on Appeal ................................................................... 1

Introduction ........................................................................................... 1

Background ............................................................................................ 4

Standard of Review ................................................................................. 8

I.   The Issue on Appeal Is One of Mixed Law and Fact ......................... 9

II.  Appellate Courts Interpreting Bankruptcy Court Orders Defer to the Bankruptcy Court as an Institution, and not to a Particular Judge .......... 11

Argument .............................................................................................. 13

I.   The Court Should Affirm the Bankruptcy Court .............................. 13

II.  Equitable Recoupment Should Be Applied Narrowly—*i.e.*, "Applied Correctly"—Which Means It Cannot Be Applied Here ......................... 20

III. Section 1141(d)(1) Extinguishes Equitable Recoupment .................. 24

## TABLE OF AUTHORITIES

**Cases**

*Ad Hoc Comm. S'holders v. Allied Nev. Gold Corp. (In re Allied Nev. Gold Corp.)*,
565 B.R. 75 (D. Del. 2016) ................................................................ 9

*Am. Cent. Airlines, Inc. v. Dep't of Transp. (In re Am. Cent. Airlines, Inc.)*, 60 B.R.
587 (Bankr. N.D. Iowa 1986) ........................................................ 23

*Am. United Mut. Life Ins. Co. v. Avon Park*, 311 U.S. 138 (1940) ......................... 11

*Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995) ................................. 26

*Donaldson v. Bernstein*, 104 F.3d 547 (3d Cir. 1997) ....................................... 17

*First Union Commer. Corp. v. Nelson, Mullins, Riley, & Scarborough (In re Varat
Enters.)*, 81 F.3d 1310 (4th Cir. 1996) ................................... 21, 28, 29

*Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252 (3d Cir. 2000)
................................................................................ 22, 23, 24

*In re Benjamin Coal Co.*, 978 F.2d 823 (3d Cir. 1992) ............................... passim

*In re Continental Airlines*, 134 F.3d 536 (3rd Cir.) ................................. passim

*In re De Laurentiis Entertainment Group, Inc.*, 963 F.2d 1269 (9th Cir. 1992) .... 27

*In re Erie Hilton Joint Venture*, 157 B.R. 244 (Bankr. W.D. Pa. 1993) ................ 18

*In re Montgomery Ward Holding Corp.*, 306 B.R. 489 (Bankr. D. Del. 2004)
................................................................................ passim

*In re Shenango Grp. Inc.*, 501 F.3d 338 (3d Cir. 2007) ................................ 12

*In re United States Lines*, 199 B.R. 476 (Bankr. S.D.N.Y. 1996) .................. 2, 14

*In re W. R. Grace & Co.*, 2017 Bankr. LEXIS 3679 (Bankr. D. Del. Oct. 23, 2017)
................................................................................ passim

*In re W.R. Grace & Co.*, 2009 Bankr. LEXIS 1280 (Bankr. D. Del. 2009) ........... 15

*In re W.R. Grace & Co.*, 446 B.R. 96 (Bankr. D. Del. 2011) ........................... 16

*Kings Terrace Nursing Home & Health Related Facility v. N.Y. State Dep't of Soc.
Servs. (In re Kings Terrace Nursing Home & Health Related Facility)*, 184 B.R.
200 (S.D.N.Y. 1995) .............................................. 4, 28, 29, 30

*Lee v. Schweiker*, 739 F.2d 870 (3d Cir. 1984) ........................................ 22

*Long Term Disability Plan of Hoffman-LaRoche, Inc. v. Hiler (In re Hiler)*, 99
B.R. 238 (Bankr. D. N.J. 1989) ...................................................... 23

*SAIF Corp. v. Harmon (In re Harmon)*, 188 B.R. 421 (B.A.P. 9th Cir. 1995) ...... 23

*Sanders Confectionery Products, Inc., v. Heller Financial, Inc.*, 973 F.2d 474 (6th
Cir. 1992) .................................................................................. 30

*United States v. Graham (In re Monclova Care Ctr., Inc.)*, 59 F. App'x 660 (6th
Cir. 2003) .................................................................................. 15

*Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009) ................................. 12

*United States v. Norton*, 717 F.2d 767 (3d Cir. 1983) ............................... 26

*University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065 (3d
    Cir. 1992) ................................................................................................. 20
*Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81 (3d Cir. 1987) ......................... 10

**Statutes**
11 U.S.C. § 101(5) ................................................................................... 2, 14
11 U.S.C. § 363 .......................................................................................... 22
11 U.S.C. § 511 ............................................................................................ 3
11 U.S.C. § 1129 ........................................................................................ 16
11 U.S.C. § 1141 ................................................................................... passim

**Legislative History**
109 H. RPT. 31, part 1, at sec. 704 ............................................................... 3
H.R. REP. NO. 95-595, 95TH CONG., 1ST SESS. at 352-53 (1977); S.REP. NO. 95-989.
    95TH CONG., 2ND SESS. 62 (1978), U.S. CODE CONG. & ADMIN. NEWS 1978 at
    5848, 6308-6309) ..................................................................................... 2

**Rules**
Fed. R. Civ. P. 13 ..................................................................................... 30

**Treatises**
4 COLLIER ON BANKRUPTCY ¶ 502.03 (16th 2018) ........................................... 15
5 COLLIER ON BANKRUPTCY ¶ 553.10 (16th 2018) ........................................... 20
7 COLLIER ON BANKRUPTCY ¶ 1129.01 (16th 2018) ................................. 13, 16, 18
8 COLLIER ON BANKRUPTCY ¶ 1141.02 (16th 2018) ................................... 17, 25
11 COLLIER ON BANKRUPTCY ¶ TX15.05 (16th ed. 2018) ............................. 15, 16
3 MOORE'S FEDERAL PRACTICE §§ 13.11, 13.31 (Matthew Bender 3rd ed. 2018) .. 30

## STATEMENT OF ISSUE ON APPEAL

At issue is whether the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") was correct in finding that Grace's confirmed chapter 11 Plan "takes priority" in determining the rate of post-petition interest payable on the IRS's Allowed Priority Tax Claim at 4.19%, and further finding that "under the circumstances" it would be "inappropriate for the Court to apply equitable recoupment" to allow the IRS to recover post-petition interest at the higher, statutory rate.

The IRS argues that its right to post-petition interest does not arise to the level of a claim, and was therefore not subject to the Plan's treatment of post-petition interest on Allowed Priority Tax Claims. Gov't Brief at 9-10, 17. The IRS further argues that it effectively has an unfettered right to equitable recoupment, regardless of whether the Reorganized Debtors were in bankruptcy, "as long as this right of reduction is asserted as a defense and not as an independent claim for relief." *Id.* at 18, 27. The IRS is wrong as a matter of fact and law.

## INTRODUCTION

The IRS's arguments not only directly contradict the facts of this matter, including the IRS's own conduct in these chapter 11 cases in asserting its bankruptcy claim for post-petition interest, but they also directly contradict the

plain language of Bankruptcy Code section 101(5).[2]   Both the facts and the law

establish that the IRS's Claim included a post-petition interest component.   The

IRS's argument further contradicts the plain meaning of section 1141(a) and the

Confirmation Order, which make the Plan the sole source of treatment of post-

petition interest and all other Plan Claims, and which make it "inappropriate …

under the circumstances" of this matter to permit the IRS "to apply equitable

recoupment."   *In re W. R. Grace & Co.*, Case No. 01-01139 (KG), 2017 Bankr.

LEXIS 3679, at *6 (Bankr. D. Del. Oct. 23, 2017).

The story begins with the IRS's own documentation of its Claim for a 1998

corporate income tax deficiency and the statutory interest thereon.   In November

2009, after many years of audit, the IRS assessed the then-Debtors for the

undisputed 1998 tax amount and also for statutory interest computed through

December 11, 2009 (for both the pre- and post-petition periods).   The IRS

confirmed this assessment of post-petition interest in an amended proof of claim

filed in November 2012 (POC 18553) for the exact same amounts.

Legislative history confirms that unmatured, post-petition interest is a "right

to payment" and thus a bankruptcy claim.[3]   Post-petition interest is thus also a Plan

---

[2]   References to the Bankruptcy Code shall hereinafter be to "section xxx."

[3]   *See, e.g., In re United States Lines*, 199 B.R. 476, 482 (Bankr. S.D.N.Y. 1996) ("The legislative history expressly lists post-petition interest as an unmatured claim for interest") (citing H.R. REP. NO. 95-595, 95TH CONG., 1ST SESS. at 352-53 (1977); S.REP. NO. 95-989. 95TH CONG., 2ND SESS. 62 (1978), U.S. CODE CONG. & ADMIN. NEWS 1978 at 5848, 6308-6309).

Claim.  In view of these particular facts—which are unique to this matter and almost certainly will not arise again—the law is clear.[4]

The Plan is the sole source of treatment of all Claims, including but not limited to post-petition interest Claims.  11 U.S.C. § 1141(a); Confirmation Order at ¶ I.E.1; *see also In re Montgomery Ward Holding Corp.*, 306 B.R. 489, 494 (Bankr. D. Del. 2004).  The Plan provides for the payment of post-petition interest on Allowed Priority Tax Claims at a rate of 4.19%, and not at the higher, statutory rate.  Plan § 2.1.2.  Grace respectfully submits that this Court should affirm the Bankruptcy Court's decision on these grounds, and further submits that the Court need not look further in so doing.

That said, Grace and its fellow Reorganized Debtors are corporate debtors. Section 1141(d)(1) discharges all pre-confirmation claims, including the IRS's Allowed Priority Tax Claim, its Claim for post-petition interest thereon, and any and all related equitable remedies such as the affirmative defenses of set-off and recoupment (none of which the IRS asserted prior to plan confirmation) in exchange for the treatment afforded by the Plan.  This discharge precludes the IRS

---

[4]   In 2005, new section 511 was added by the Bankruptcy Abuse Prevention and Consumer Protection Act, which eliminated the Bankruptcy Court's discretion to determine the proper interest rate on tax claims and instead provided that the interest rate shall be determined under applicable non-bankruptcy law. Thus, the facts at issue here will not arise in bankruptcy cases commenced on or after October 17, 2005, the effective date of section 511.  11 U.S.C. § 511; *see also* 109 H. RPT. 31, part 1, at sec. 704 ("Under current law, there is no uniform rate of interest applicable to tax claims").

3

from exercising its affirmative defense of equitable recoupment.   11 U.S.C. § 1141(d); *see also* Confirmation Order § VI.A.1; *In re Continental Airlines*, 134 F.3d 536, 542 (3rd Cir. 1998) (set-off extinguished if not exercised prior to confirmation); *Kings Terrace Nursing Home & Health Related Facility v. N.Y. State Dep't of Soc. Servs. (In re Kings Terrace Nursing Home & Health Related Facility)*, 184 B.R. 200, 202 (S.D.N.Y. 1995) ("Kings Terrace") (equitable recoupment right was a claim extinguished by section 1141(d)(1)).

Grace respectfully submits that, based on the foregoing facts and analysis, this Court should uphold the Bankruptcy Court's decision.

## BACKGROUND

During the course of the chapter 11 cases, the IRS audited Grace's income tax return for the 1998 tax year.  App. 1 (Exhibit A (Form 870) to Grace's *Reply to United States' Opposition to Debtors' Motion to Enforce*, filed June 14, 2017 [Docket no. 32891] (the "Grace Reply")).[5]  In May 2002, the IRS filed a proof of claim in the amount of $311,165,753.35 to document its claim.  App. 2 (POC 830, Exhibit C to the *Reorganized Debtors' Objection to the Remaining Claims of the Internal Revenue Service (Substantive)*, filed April 22, 2014 [Docket no. 32036] (the "2014 IRS Claims Objection")).  POC 830 expressly states "[t]his claim is not subject to any setoff or counterclaim." *Id.*

---

[5]   Grace has filed contemporaneously herewith its *Appendix to the Answering Brief of Appellee W. R. Grace & Co.*  References to exhibits contained in the appendix are cited as "App. [number] (name of exhibit)."

The IRS was served notice of Plan confirmation and the objection deadline. The IRS did not file an objection to Plan confirmation.  Confirmation Order at 5-6. The IRS took no other action to preserve its rights of recoupment (or set-off) prior to confirmation.  *In re W.R. Grace & Co.*, Case No. 01-01139 (KG) [Docket *passim*].[6]

In November 2009, as the confirmation trial was proceeding in the Bankruptcy Court, the IRS determined that, as of March 15, 1999, Grace owed $5,852,658 in tax for tax year 1998.  App. 1 (Form 870); *see also* App. 3 (Exhibit C (IRS Transcript) to the Interest Rate Determination Motion).  The IRS assessed the then-Debtors for both the 1998 tax and statutory interest due on that 1998 tax through December 11, 2009, which clearly comprises both pre- and post-petition interest claims.   Neither of the foregoing, IRS-prepared documents mentions recoupment.

On January 31, 2011, the Bankruptcy Court confirmed Grace's Plan. [Docket No. 26155].  In March 2012, Grace filed a refund claim to carry back its 2008 net operating loss to the 1998 tax year.  Grace Reply at ¶ 9 n. 2.  On December 12, 2012, the IRS filed an amended proof of claim as to the 1998 tax year, in which the IRS asserted a claim for $11,356,686.82, comprising $5,852,658

---

[6]   Grace submits that the Bankruptcy Court's docket is properly part of the record on appeal.  To the extent that it is not, this Court may take judicial notice of the Bankruptcy Court's docket and any document filed therein. FED. R. EVID. 201(b); *see also* Notes of Advisory Committee on Rules ("In accord with the usual view, judicial notice may be taken at any stage of the proceedings, whether in the trial court or on appeal").

5

in tax and $5,504,028.82 in statutory interest ($868,407 attributable to prepetition interest, and the remainder attributable to the post-petition period).  App. 4 (POC 18553, Exhibit B to the 2014 IRS Claims Objection).  POC 18553 states that "[t]he United States has not identified a right of setoff or counterclaim," and that "[a]ll rights of setoff are preserved and will be asserted to the extent lawful."  *Id.*  The POC does not mention recoupment, nor does it attempt to preserve any counterclaims other than set-off.

On February 3, 2014, the Plan was substantially consummated, and Grace and its 61 fellow Reorganized Debtors emerged from chapter 11.  *Notice of Occurrence of the Effective Date*, filed February 13, 2014 [Docket no. 31732] (the "Effective Date Notice").  On or about April 18, 2014, Grace paid three otherwise uncontested IRS Claims with Plan interest accruing at 4.19%.  The IRS accepted payment without objection.  Interest Rate Determination Motion at ¶ 9.  On April 22, 2014, Grace filed its 2014 IRS Claims Objection on the basis that the IRS's Claims for the 1998 tax year (Claims nos. 830 and 18553) were satisfied in full by application of various tax credits from 2002-07 and by a tax refund generated by a net operating loss ("NOL") from tax year 2008, and setting forth its position that post-petition interest should be computed at the Plan 4.19% interest rate.

On September 12, 2014, the IRS paid a refund to Grace in the amount of $2,027,545, which reflected the IRS's position that post-petition interest should be

6

computed at the statutory rate, and not at the Plan rate, from the Petition Date until March 15, 2009, the date on which both parties agreed that the IRS's 1998 tax year Claim was satisfied.

In March 2015, after the IRS refused to enter into a written settlement agreement with Grace as to the agreed-upon Allowed Amount of the 1998 Allowed Priority Tax Claim, the two sides instead agreed, with the understanding that the applicable post-petition interest rate was still in dispute, that Grace would withdraw its 2014 IRS Claims Objection and the IRS would then withdraw its Claims. This agreement between the IRS and Grace constituted a compromise and settlement within the meaning of Plan § 5.1. Plan § 5.1 (claims and objections "may be … compromised and settled in accordance with the business judgment of the Reorganized Debtors without approval of the Bankruptcy Court").

On April 17, 2017, after Grace and the IRS were unable to come to agreement as to the correct rate of interest, Grace filed its Interest Rate Determination Motion. The IRS objected to the motion—and for the first time raised its affirmative defense of equitable recoupment. *United States' Opposition to Debtors' Motion to Enforce*, filed on May 11, 2017 [Docket no. 32877] (the IRS's "Opposition"). Grace addressed the IRS's arguments in its Reply. On September 29, 2017, the Bankruptcy Court heard oral argument. *In re W. R. Grace & Co.*, Case no. 01-1139 (KG), Transcript [Docket no. 929622]. At the hearing,

the Bankruptcy Court permitted the IRS to file a post-oral argument letter on certain matters, which it did on September 26, 2017. *Letter to the Bankruptcy Court from the United States*, filed September 26, 2017 [Docket no. 929624]. On October 3, 2017, Grace filed its reply letter. *Letter to the Court from the Reorganized Debtors*, filed on October 3, 2017 [Docket no. 32954].

On October 23, 2017, the Bankruptcy Court issued its opinion. *Grace*, 2017 Bankr. LEXIS 3679. In its opinion, the Bankruptcy Court made the following findings of fact:

> [I]n reality and effect, the Plan is the basis for the payment of post-petition interest. The IRS had an allowed Priority Tax Claim in the sum of $6,721,065, which is the 1998 tax of $5,852,658, plus statutory interest accrued through the filing of the bankruptcy petitions. The Plan then provides for the payment of interest at 4.19% on the Allowed Priority Tax Claim.

*Id.* at *6. Based upon these facts, the Court found that "[t]he Plan takes priority and it would be inappropriate for the Court to apply equitable recoupment under the circumstances." *Id.*

### STANDARD OF REVIEW

The issue of whether the Plan governs the rate of post-petition interest on the IRS's Allowed Priority Tax Claim presents a question of mixed fact and law in which the unique character of the Bankruptcy Court comes into play.

8

## I.   THE ISSUE ON APPEAL IS ONE OF MIXED LAW AND FACT

The IRS posits that the "sole issue on appeal is legal in nature." Gov't Brief at 3.[7] In so doing, the IRS states that it wishes to abandon the argument that, to the extent that "the IRS's right to reduce Grace's refund by accrued interest was a 'claim,' the United States contended that it was not an "Allowed" claim as defined by the Plan." *Id.* at n. 1. The IRS may wish to ignore that it asserted a claim for post-petition interest on at least three separate occasions. *See* App. 1 (Form 870); App. 3 (IRS Transcript); App. 4 (POC 18553).   But it cannot, for these inconvenient (for the IRS) facts are the very crux of the matter, and they lead inexorably to the proper treatment of the issue on appeal, which is whether the Plan is the sole source of treatment for post-petition interest on the IRS's Allowed Priority Tax Claim, as the Bankruptcy Court held.   To be clear, the issue on appeal is a quintessential question of mixed fact and law for this Court to decide, the standard for which is well established.   *Ad Hoc Comm. S'holders v. Allied Nev. Gold Corp. (In re Allied Nev. Gold Corp.)*, 565 B.R. 75, 82 (D. Del. 2016) (On appeal, "the District Court applies a clearly erroneous standard to the Bankruptcy Court's findings of fact and a plenary standard to that court's legal conclusions").

---

[7]   The IRS also asserts that "the dispute turns on whether the IRS exercised a right of recoupment or a right of setoff." Gov't Brief at 12.   Set-off is not at issue in this appeal.   Indeed, Grace has never asserted that argument. Nonetheless, in either case, the IRS's appeal is not solely of a legal issue in a vacuum.

The Bankruptcy Court necessarily based its decision that the Plan "takes priority" over the IRS's equitable recoupment defense on a panoply of facts, beginning with the IRS's "claim" for post-petition interest, both as a matter of fact (which the IRS itself documented on at least three separate occasions) and as a matter of law. The Bankruptcy Court found that the IRS had an Allowed Priority Tax Claim for the 1998 tax and the prepetition interest thereon. Only then, based upon those and other findings of fact (including Plan confirmation and consummation), could the Bankruptcy Court determine that the Plan is the sole source of treatment of the IRS's post-petition interest Claim.

To the extent that the IRS stands by its assertion in its brief that it has abandoned any appeal of the Bankruptcy Court's findings of fact, there is a clear consequence to that assertion—the Bankruptcy Court's findings of fact stand uncontested. *See, e.g., Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 88 (3d Cir. 1987) ("An issue that is not addressed in an appellant's brief is deemed waived on appeal") (internal citation omitted). And these facts lead inexorably to one conclusion: The IRS had a Claim for post-petition interest, and the Plan is the sole source of treatment for that Claim. 11 U.S.C. § 1141(a); Confirmation Order at ¶ I.E.1; *see also In re Montgomery Ward Holding Corp.*, 306 B.R. 489, 494 (Bankr. D. Del. 2004). The Bankruptcy Court accordingly held on these facts that the Plan indeed "takes priority," and the IRS was "under the circumstances" precluded from

invoking the doctrine of equitable recoupment.  *Grace*, 2017 Bankr. LEXIS 3679 at *6.

## II.   APPELLATE COURTS INTERPRETING BANKRUPTCY COURT ORDERS DEFER TO THE BANKRUPTCY COURT AS AN INSTITUTION, AND NOT TO A PARTICULAR JUDGE

The IRS next argues that this Court should not review the Bankruptcy Court's interpretation of the Plan and Confirmation Order with any deference because Judge Fitzgerald was presiding when the Confirmation Order was entered, and Judge Gross issued the opinion in this case.  Gov't Brief at 4-6.  This argument misapprehends why an appellate court applies a deferential standard to reviewing a bankruptcy court's interpretation of its own order.

To begin with, the Supreme Court has long held that a bankruptcy court is:

> [A] court of equity, ... [that] is guided by equitable doctrines and principles ... A court of equity may in its discretion in the exercise of the jurisdiction committed to it grant or deny relief upon performance of a condition which will safeguard the public interest.

*Am. United Mut. Life Ins. Co. v. Avon Park*, 311 U.S. 138, 145 (1940) (internal citation omitted).  It is in this context that the Third Circuit Court of Appeals has adopted the majority view that an appellate court should defer to the bankruptcy court's interpretation of its own orders.

> We agree with the majority view that a bankruptcy court's interpretation of its own order ought to be subject to review for an abuse of discretion. This deferential standard should not apply, of course, if the issue being

reviewed presents only a question of law. This bifurcated approach both ensures the appropriate role of this Court to review de novo pure questions of law, and also accords great weight to the Bankruptcy Court's construction of an order with which it is familiar by virtue of its direct involvement in the proceedings.

*In re Shenango Grp. Inc.*, 501 F.3d 338, 346 (3d Cir. 2007) *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151 n. 4 (2009) ("Numerous Courts of Appeals have held that a bankruptcy court's interpretation of its own confirmation order is entitled to substantial deference") (internal citations omitted.

The IRS's argument that this Court should not follow the majority rule because Judge Gross did not author the Confirmation Order or preside over the confirmation trial ignores the reasoning used by the Third Circuit in *Shenango*— and it ignores the day-to-day role that Judge Gross has had in presiding since August 2016 over the myriad post-effective date issues in these chapter 11 cases, which of course necessitated his interpreting the Plan and Confirmation Order. *Grace*, Case no. 01-1139 [Docket no. 327653] (designation of Judge Gross). It is in this context that the language used by the Third Circuit should be considered. Indeed, in the above-quoted passage from *Shenango*, the Third Circuit notably did not use the words "author the plan." The Third Circuit used the words "direct involvement in the proceedings," a notion that reflects the fact that Judge Gross (and whoever else may preside over the chapter 11 cases before they are finally

closed) has been intimately involved in interpreting and applying the terms of both the Plan and the Confirmation Order.

Finally, it is worth remembering the nature of the Plan and the Confirmation Order when determining the degree of deference that this Court should give the Bankruptcy Court. As discussed in Collier:

> [A] valid plan substitutes, in much the same way as a common law novation would, the obligations as stated in the plan for all preconfirmation claims and interests … *As a consequence, how the confirmed plan treats a particular claim or interest is of vital importance. An affected creditor or interest holder will have only such rights postconfirmation as the drafted plan may give it.*

7 COLLIER ON BANKRUPTCY ¶ 1129.01 (16th 2018) (emphasis added).

This is the very gravamen of the dispute between the IRS and Grace. The IRS wishes to deviate from the Plan's terms, and thereby be treated differently from—and, indeed, better than—all of the other tax authorities with Allowed Priority Tax Claims (including its own treatment as to its three other Allowed Priority Tax Claims). All that Grace wishes to do—which the Bankruptcy Court found to be the right way of doing things—is to treat the IRS's Allowed Priority Tax Claim as it has all of the other Allowed Priority Tax Claims.

## ARGUMENT

## I.   THE COURT SHOULD AFFIRM THE BANKRUPTCY COURT

The facts of this matter lead inexorably to one conclusion: The Plan "takes priority … under the circumstances" of this matter. The IRS had a Claim for the

13

1998 tax and statutory interest thereon, which comprised both pre- and post-petition interest.   The Bankruptcy Court found that the IRS had an Allowed Priority Tax Claim for the 1998 tax and prepetition interest at the statutory rate. The Plan provided that the IRS's Claim for post-petition interest would be Allowed at a rate of 4.19%.   The Plan is the sole source of treatment of the post-petition interest component of the IRS's Claim.   Therefore, the IRS may not avail itself of the defense of equitable recoupment, and the Bankruptcy Court's decision should be affirmed.

Section 101(5) includes "rights to payment" that are "unmatured" on the petition date within its broad definition of "claim."   11 U.S.C. § 101(5).   Thus rights to unmatured, post-petition interest are bankruptcy claims. *See, e.g., In re United States Lines*, 199 B.R. 476, 482 (Bankr. S.D.N.Y. 1996) ("The legislative history expressly lists post-petition interest as an unmatured claim for interest") (internal citation omitted).   The Plan's definition of "Claim" is coterminous with Section 101(5).   Plan § 1.1.75.   The term "Claim" therefore includes not only the IRS's claim for the 1998 tax and prepetition interest, but also its claim for post-petition interest, which the IRS itself documented on three separate occasions. App. 1 (Form 870); App. 3 (IRS Transcript); App. 4 (POC 18553).

The tax and pre- and post-petition interest components of the IRS's Claim were properly classified as a Priority Tax Claim, because the 1998 tax year return

was due on March 15, 1999, less than three years before the Petition Date, and the interest thereon was treated the same as the tax itself.  11 U.S.C. § 507(a)(8)(A); Plan § 1.179 ("'Priority Tax Claim' shall mean a Claim of the kind specified in Bankruptcy Code §§ 502(i) or 507(a)(8)"); *see also* Gov't Brief at 24 (citing U.S.C. § 6601(e)(1) (references to tax also refer to interest thereon)).

Section 502(b)(2) provides the mechanism for the allowance of claims, including a default presumption that post-petition interest claims are disallowed. 11 U.S.C. §502(b)(2); *see also In re W.R. Grace & Co.*, 2009 Bankr. LEXIS 1280, at *7 (Bankr. D. Del. 2009) ("The presumption is that unsecured creditors receive no interest at all").   Such disallowance does not, however, mean that the disallowed post-petition interest ceases to be part of a claim.  *See, e.g., United States v. Graham (In re Monclova Care Ctr., Inc.)*, 59 F. App'x 660, 663 (6th Cir. 2003).  The rationale for this statutory presumption is that claims for post-petition interest are disallowable when general unsecured claims are not paid in full.  4 COLLIER ON BANKRUPTCY ¶ 502.03 (16th 2018).  But as noted in Collier, "the proposition that post-petition interest is not allowed in bankruptcy … is too simplistic a statement of the general rule."  11 COLLIER ON BANKRUPTCY ¶ TX15.05 (16th ed. 2018).

It follows that the Bankruptcy Code provides several methods by which post-petition interest claims may become allowable under certain circumstances.

15

For example, section 726(a) accords post-petition interest a fifth priority in distribution, which section 1129 incorporates by requiring that a chapter 11 plan treat creditors and their claims equal to or superior to what the claimholder would "receive or retain if the debtor were liquidated under chapter 7 of this title on such date."   11 U.S.C. § 1129(a)(7)(A)(ii); *see also* 11 COLLIER ON BANKRUPTCY ¶ TX15.05.

Thus chapter 11 plans such as the Plan, in which section 726(a)'s first four priorities in distribution are satisfied, may provide for the payment of interest on unsecured claims. *In re W.R. Grace & Co.*, 446 B.R. 96, 147 n. 92 (Bankr. D. Del. 2011).   When confirmed chapter 11 plans do provide for the payment of interest on allowed prepetition claims, they are as discussed below the sole source of such treatment because the plan's confirmation novated that post-petition interest claim into a contractual right to payment of interest on the terms of the plan.   7 COLLIER ON BANKRUPTCY ¶ 1129.01; *see also In re Benjamin Coal Co.*, 978 F.2d 823, 827-28 (3d Cir. 1992); *Montgomery Ward*, 306 B.R. at 494.   Plan § 2.1.2 provides that post-petition interest is payable on Allowed Priority Tax Claims at 4.19%.

On April 22, 2014, the Reorganized Debtors filed their objection to the IRS Claims for the 1998 tax.   2014 IRS Claims Objection.   On September 12, 2014, the IRS issued a refund check to Grace in the amount of $2,027,545 with respect to Grace's 1998 taxable year.   Interest Rate Determination Motion at ¶ 11.   The

16

parties thereafter agreed to resolve the IRS's Claim with the understanding that the applicable rate of post-petition interest remained in dispute.   As a result, the Reorganized Debtors withdrew their 2014 IRS Claims Objection without prejudice [Docket no. 32529], and the IRS withdrew Claims nos. 830 and 18553.   Interest Rate Determination Motion Exhibit B (Letter dated March 16, 2015).   This agreement constituted a compromise and settlement between the Reorganized Debtors and the IRS pursuant to Plan § 5.1, such that the IRS had an Allowed Priority Tax Claim for $6,721,065 as of the Petition Date, comprising $5,852,658 of tax arising as of March 15, 1999, for tax year 1998, and $868,407 of interest accrued from March 15, 1999, through the Petition Date.   *Grace*, 2017 Bankr. LEXIS 3679 at *7.

The Plan unequivocally binds the IRS as a creditor.   Confirmation Order at ¶ I.E.1; 11 U.S.C. § 1141(a); *see also Montgomery Ward*, 306 B.R. at 494; 8 COLLIER ON BANKRUPTCY ¶ 1141.02 (16th ed. 2018).   The Confirmation Order has been a final order since before the Effective Date, and thus is res judicata as to the IRS as to all issues.   Effective Date Notice; *see also Donaldson v. Bernstein*, 104 F.3d 547, 554 (3d Cir. 1997) ("a confirmation order is *res judicata* as to all issues decided or which could have been decided at the hearing on confirmation") (internal citation omitted).

The effect on Plan Claims and their holders of confirmation and the substantial consummation of the Plan on the Effective Date is profound. As the Third Circuit has held:

> Once the reorganization plan is approved by the bankruptcy court, each claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan itself. Thereafter, each claimant's remedies for any future nonpayment of claims acknowledged in the plan are limited to the usual remedies for the type of claim granted by the plan's provisions.

*In re Benjamin Coal Co.*, 978 F.2d 823, 827 (3d Cir. 1992); 7 COLLIER ON BANKRUPTCY ¶ 1129.01 ("An affected creditor or interest holder will have only such rights postconfirmation as the drafted plan may give it"). To put a finer point on the issue, plan confirmation terminates pre-confirmation claims, leaving claimants only with the contractual right to payment provided for in the confirmed chapter 11 plan. *See, e.g., In re Erie Hilton Joint Venture*, 157 B.R. 244, 246 (Bankr. W.D. Pa. 1993) (citing *Benjamin Coal Co.*, 978 F.2d at 827); 7 COLLIER ON BANKRUPTCY ¶ 1129.01 (same).

The Confirmation Order, to which the IRS did not object, and which binds the IRS, substitutes a contractual right of payment on the terms of the Plan for the IRS's post-petition statutory interest Claim and for its 1998 Allowed Priority Tax Claim. This mechanism confirms why the Plan is the sole source of treatment of the IRS's post-petition interest Claim:

18

> The rights afforded in the Plan and the treatment of all Claims, Plan Claims, and Demands shall be in exchange for and shall discharge all Claims, Plan Claims, and Demands of any nature whatsoever, ***including any interest accrued thereon from and after the Petition Date***.

Confirmation Order at ¶ VI.A.1 (emphasis added).

Thus in this matter, the effect of Plan confirmation was to give the IRS a "new" right to payment for post-petition interest at 4.19%, compounded annually from the Petition Date through March 15, 2009, the date of payment, as a substitute for its prepetition Claim for post-petition interest at the statutory rate. The IRS has no other recourse for the payment of post-petition interest, because the Plan is the sole source of treatment of the IRS's Allowed Priority Tax Claim, including but not limited to the rate of post-petition interest on that Claim. *Montgomery Ward*, 306 B.R. at 494. Thus, the Bankruptcy Court was acting well within the confines of long-accepted Third Circuit precedent in holding that the "Plan takes priority" in determining the Allowed Amount of the IRS's post-petition interest claim. *Grace*, 2017 Bankr. LEXIS 3679 at *6.

Grace respectfully submits that for the foregoing reasons this Court should uphold the Bankruptcy Court's decision below that the Plan "takes priority," meaning that it would be "inappropriate for the Court to apply equitable recoupment under the circumstances"—circumstances that the IRS has chosen not

to contest. *Grace*, 2017 Bankr. LEXIS at *6; Gov't Brief at 3 (the "sole issue on appeal is legal in nature").

## II.   EQUITABLE RECOUPMENT SHOULD BE APPLIED NARROWLY—*I.E.*, "APPLIED CORRECTLY"—WHICH MEANS IT CANNOT BE APPLIED HERE

The Third Circuit has cautioned that recoupment, "as a non-statutory, equitable exception to the automatic stay" should be "narrowly construed" in bankruptcy cases. *University Med. Ctr. v. Sullivan (In re University Med. Ctr.)*, 973 F.2d 1065, 1081 (3d Cir. 1992). Consistent with this view, the Third Circuit has applied a "more restrictive 'integrated transaction test'" in determining whether the "same transaction" test is met in order for recoupment to apply. 5 COLLIER ON BANKRUPTCY ¶ 553.10 (16th 2018) (quoting *In re University Med. Ctr.*, 973 F.3d at 1081). Under this test, "as long as the amount of the relevant obligations to be recouped may be 'independently determinable,' recoupment may be denied." *Id.* (quoting *In re University Med. Ctr.*, 973 F.3d at 1081).

While it acknowledges this precedent, the IRS nonetheless argues that the doctrine of equitable recoupment "should be applied in all cases where it would be available outside bankruptcy, and it would be unfair to the defendant not to do so." Gov't Brief at p. 27. To do so would, however, ignore the admonishment in Collier to apply the doctrine correctly in view of the particular facts of a given matter. 5 COLLIER ON BANKRUPTCY ¶ 553.10 (16th 2018). Indeed, the IRS would have this Court ignore the fact that the IRS had a Claim for post-petition interest

arising from its Allowed Priority Claim.   Clearly the IRS's post-petition interest Claim was "independently determinable," as the IRS itself documented the amount of post-petition interest on several occasions.   Moreover, had Grace never filed its refund claim to carry back its 2008 NOL, the IRS still would have been entitled to collect the amount of post-petition interest that Grace owed on the 1998 tax liability (computed at the Plan interest rate of 4.19%); the IRS was not limited to merely recouping its interest from Grace's refund.   Under the Third Circuit's *University Medical Center* decision, this alone is sufficient to cause the IRS's recoupment claim to fail the same transaction test.

The IRS's argument would also have the Court ignore the fact that the IRS never asserted its equitable recoupment rights prior to Plan confirmation, thereby waiving its right to assert that defense. *See First Union Commer. Corp. v. Nelson, Mullins, Riley, & Scarborough (In re Varat Enters.)*, 81 F.3d 1310, 1317 (4th Cir. 1996).   Moreover, this argument would destroy the effect of Plan confirmation, which was to substitute rights to payment on the terms of the Plan for the IRS's pre-confirmation Claims for the 1998 tax and statutory (pre- and post-petition) interest thereon. Confirmation Order at ¶ VI.A.1; *see also Benjamin Coal Co.*, 978 F.2d at 827.

The IRS's citation to *Folger Adam Sec., Inc. v. DeMatteis/MacGregor, J.V.*, 209 F.3d 252 (3d Cir. 2000), for the proposition that equitable recoupment does

not rise to the level of a bankruptcy claim is also inapposite.[8]  Gov't Brief at 10,

17-18.  *Folger* involved a section 363 sale, and the question was whether the

affirmative defense of equitable recoupment—which was first raised prior to the

petition date—was the kind of "other interest" referred to in section 363(f).  *Id.* at

258.    The Third Circuit concluded that section 363(f) did not render that

bankruptcy sale "free and clear" of the creditor's recoupment rights.  *Id.* at 260.

But the fact pattern in *Folger* differs radically from the facts of this matter.

*Folger* did not involve (as here) a failure to raise recoupment rights prior to Plan

confirmation, nor did it implicate the effect of section 1141 upon Plan

confirmation, including the Plan's exclusive treatment of an allowed claim or the

attendant post-petition interest claim.  *Folger* instead concerned the effect of a

section 363 sale on a creditor's equitable recoupment rights when the debtor/seller

and the section 363 buyer (management of both were largely the same people)

were clearly playing fast and loose in the sale at issue in *Folger*.

For example, the *Folger* debtor did not give the creditor any notice of the

auction and sale.  What's more, the creditor's rights were based on executory

contracts that the debtor went out of its way not to assume.  When the creditor

---

[8]    The IRS also cites to *Lee v. Schweiker*, 739 F.2d 870 (3d Cir. 1984), for the proposition that recoupment is
justified when the "application of the limitations on setoff in bankruptcy would be inequitable." Gov't Brief at
27 (citing *Lee v. Schweiker*, 739 F.2d at 875 (internal citation omitted)). But the Third Circuit did not in *Lee v.
Schweiker* address the determinative issues found here, and the case is therefore not useful in analyzing the
matter before this Court other than to say that the doctrine should be applied properly on the facts before the
Court.

finally was able to file its proofs of claim after entry of the sale order, the bankruptcy court disallowed those claims based upon the sale order that the creditor had no notice of.  These events left recoupment and set-off in place as the creditor's sole remedies.[9]  *Id.* at 256, 260.  Moreover, the liquidating chapter 11 plan specifically reserved the creditor's recoupment and set-off rights, which meant that the section 1141(d)(1) discharge was not implicated.  Finally, the Third Circuit made it clear that the equities of the situation supported the creditor in those particular circumstances.  *Id.* at 264.[10]

Thus as Grace noted in its Reply (at ¶ 14), the Third Circuit stated based on those facts that the claimant—in asserting its right of recoupment—was "not seeking to recover money on an enforceable obligation of ... [the buyer], but rather, is asserting only defenses to claims by [the buyer]."  209 F.3d at 260.  The court therefore held that the claimant's recoupment defense did not rise to the level of a "claim" under the Bankruptcy Code, since a "claim requires an enforceable obligation of the debtor to pay the claimant."  *Id.*  The situation here is much different.  The IRS had an Allowed Priority Tax Claim and it had a related post-

---

[9]   The fact that the creditor's claims were later reinstated is testimony to the fast and loose nature of how the debtor was dealing with the creditor.  *Id.* at 256 n. 5.

[10]   The IRS's reliance on the *Hiler, American Central Airlines,* and *Harmon* cases is similarly misplaced, because the facts in those dictate different outcomes than the facts of this matter.  *Long Term Disability Plan of Hoffman-LaRoche, Inc. v. Hiler (In re Hiler),* 99 B.R. 238 (Bankr. D. N.J. 1989) (recoupment occurred pre-petition); *Am. Cent. Airlines, Inc. v. Dep't of Transp. (In re Am. Cent. Airlines, Inc.),* 60 B.R. 587 (Bankr. N.D. Iowa 1986) (recoupment asserted prior to chapter 11 plan confirmation); *SAIF Corp. v. Harmon (In re Harmon),* 188 B.R. 421 (B.A.P. 9th Cir. 1995) (recoupment asserted prior to discharge).

petition interest Claim.  Both were enforceable obligations, and the Plan was the sole source of treatment for the otherwise disallowable post-petition interest Claim. Finally, unlike in *Folger*, where the creditor did not receive notice of the pending asset sale, the IRS was fully on notice of the Plan confirmation process.  The IRS did not object to Plan confirmation, and it did not raise its equitable recoupment defense until long after Plan confirmation.  Thus *Folger* is of no moment in determining this matter.

Thus it is clear that the doctrine of equitable recoupment should be applied correctly here—which is to say that on the facts of this matter, the "Plan takes priority, and it would be inappropriate for the Court to apply equitable recoupment under the circumstances." *Grace*, 2017 Bankr. LEXIS 3679 at *6.

## III.   SECTION 1141(D)(1) EXTINGUISHES EQUITABLE RECOUPMENT

This Court need go no further in upholding the Bankruptcy Court's decision on the particular facts of the matter than to find that it would be improper to permit the IRS to assert an affirmative defense of equitable recoupment for the first time after its post-petition statutory interest claim had been novated into a contractual right to payment as a result of Plan confirmation.  That said, analysis of the discharge afforded Grace and its fellow Reorganized Debtors by section 1141(d)(1) confirms the correctness of that decision.  Based upon that discharge, the Confirmation Order "precludes parties from raising claims or issues that they

could have or should have raised before confirmation." 8 COLLIER ON BANKRUPTCY ¶ 1141.02 (internal citations omitted).

The IRS did not object to Plan confirmation or otherwise attempt to raise or preserve an affirmative defense of equitable recoupment prior to confirmation. Confirmation Order at 2; *Grace*, Case no. 01-1139 [Docket, *passim*]. In fact, the IRS did not raise this affirmative defense until May 2017, when it filed its Opposition. Section 1141(d)(1) thus discharged whatever equitable recoupment rights that the IRS may have had regarding its 1998 Allowed Priority Tax Claim and its associated Plan Claim for post-petition interest thereon. 11 U.S.C. § 1141(d)(1); *In re Continental Airlines*, 134 F.3d 536, 542 (3rd Cir.). In *Continental Airlines*, the Third Circuit held on facts similar to those found by the Bankruptcy Court in this matter that entry of the confirmation order "extinguished" the "Government's set-off rights, if any." *Id*. at 542.

In that case, the bankruptcy court confirmed the debtor's chapter 11 plan in January 1993. The Government did not object to plan confirmation. Meanwhile, in an unrelated case, a federal district court had ordered the Government to return approximately $4.8 million to the debtor. *Id*. In May 1993, more than four months after plan confirmation, the Government for the first time asserted its right to set-off, seeking to set off the $4.8 million (which had been deposited in the bankruptcy court's registry) against its general unsecured claims. *Id*.

DOCS_DE:219750.1

The Government argued that the $4.8 million on deposit was not "property of the [bankruptcy] estate," and relied on the Supreme Court's holding in *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995), which it asserted overruled the Third Circuit's holding in *United States v. Norton*, 717 F.2d 767 (3d Cir. 1983). *Id.* at 538-399.   In *Norton*, the Third Circuit held that "set-off is not permitted after confirmation," thus denying the IRS the ability to "offset an outstanding tax refund against an outstanding tax liability after confirmation of the debtor's plan." Neither the plan in *Continental Airlines* nor the plan in *Norton* had any provision for preserving a creditor's set-off rights.   *Id.* The Third Circuit distinguished *Strumpf* by noting that in *Strumpf*, "the Supreme Court merely held that a bank's pre-confirmation temporary withholding of a debt that it owed a depositor who was in bankruptcy, in order to protect its set-off rights, did not violate the automatic stay."   *Id.* As the Third Circuit further noted, "the Supreme Court in *Strumpf* expressly refused to address the issue of the effect of confirmation on set-offs," which it noted was "dispositive to the resolution" of the *Continental* appeal. *Id.* at 540.

The Third Circuit held that, under *Strumpf*, the debtor's claim to the funds on deposit in the bankruptcy court's registry was property of the debtor's estate (as compared to the possession of the physical funds themselves). *Id.* Thus, the Third Circuit held, "contrary to the Government's assertion, its set-off rights in the funds

did not remain unaffected by confirmation of the plan" because plan confirmation extinguished its set-off right. *Id.*

The Third Circuit also distinguished a case from the Ninth Circuit, *In re De Laurentiis Entertainment Group, Inc.*, 963 F.2d 1269 (9th Cir. 1992), in which the Ninth Circuit held that a creditor's section 553 set-off rights survived a corporate debtor's plan confirmation because "§ 553 must take precedence over § 1141. Although uncertain, [the Ninth Circuit] ... also believed that the language of § 553 'seems intended to control notwithstanding any other provisions of the Bankruptcy Code'." *Cont'l Airlines, 134 F.3d* at 541 (citing *De Laurentiis Entertainment*, 963 F.2d at 1276-77). The Third Circuit further stated that the Ninth Circuit:

> [H]owever, predicated its decision upon the particular facts in the case before it, including the creditor's diligent pursuit of its set-off claim before the bankruptcy court "during the entire period the reorganization plan was being considered." ... The court noted that the creditor, NBC, had filed a proof of claim and petition for relief from stay.

*Id.* The Third Circuit thus held that section 1141 extinguished a creditor's set-off rights to the extent that the creditor did not raise those rights prior to plan confirmation. *Id.* at 542; *see also Varat Enters.*, 81 F.3d at 1317 (failure to raise a counterclaim prior to plan confirmation constitutes waiver).

If the IRS were asserting a right to set-off its post-petition interest claim against the refund in this matter, which the IRS has taken great pains to assert is

not the case, this Court would be bound by the Third Circuit precedent in *Continental Airlines* because the IRS did not attempt to preserve any such set-off right prior to Plan confirmation (but it did attempt to do so post-confirmation in POC 18553—which it cannot do). Gov't Brief at 12 ("the dispute turns on whether the IRS exercised a right of recoupment or a right of setoff"). The IRS instead asserted a post-confirmation right to an affirmative defense of equitable recoupment. This it cannot do, because that right was discharged upon Plan confirmation for the same reasons that the Third Circuit held that a post-confirmation assertion of the affirmative defense of set-off was discharged. ***First***, Grace's right to claim the 1998 tax refund was property of the bankruptcy estate that had re-vested in the Reorganized Debtors on the Effective Date, and ***second***, the IRS had already waived its right to assert an affirmative defense of equitable recoupment by failing to raise that defense prior to Plan confirmation. *Cont'l Airlines, 134 F.3d* at 542; *Varat Enters.*, 81 F.3d at 1317.

The *Kings Terrace* SDNY District Court's holding confirms this analysis. 184 B.R. at 202. In that case, the court held that section 1141(d)(1) discharged a governmental entity's (the New York State Department of Social Services, "DSS") equitable right to recoupment because DSS did not assert the defense prior to confirmation. *Id.* The court stated that, "whatever its foundations, there can be no recoupment unless there is an underlying right" to payment, and such a right is

"unquestionably" a bankruptcy claim, particularly when recoupment was "merely one form of relief available"—which is precisely the case in the instant matter. *Id.* at 203 (internal citations omitted). Finally, the *Kings Terrace* court stated that:

> To allow a creditor such as DSS to stand outside the process of reorganization and later assert its right to recoupment thus would frustrate an important policy underlying the Code by undermining and, in some circumstances, destroying the utility and reliability of the bankruptcy judge's feasibility determination.

*Id.* at 204.

This Court could, if it so chooses, find that section 1141(d)(1) discharged the IRS's right to equitable recoupment against the refund for the same policy reasons and the same type of factual findings evinced by the Third Circuit in *Continental Airlines* and the SDNY District Court in *Kings Terrace*. In particular:

- The IRS had a Claim for tax and pre- and post-petition interest, which it documented, and that Claim included potential affirmative defenses such as equitable recoupment and set-off. *Kings Terrace*, 184 B.R. at 202;

- The IRS did not object to Plan confirmation or otherwise assert a right to equitable recoupment prior to entry of the Confirmation Order, and thereby waived its right to raise that issue post-confirmation. Confirmation Order at 5-6; *see also Varat Enters.*, 81 F.3d at 1317;

- Plan confirmation substituted a "new" claim for post-petition interest (at 4.19%) on its Allowed Priority Tax Claim for the IRS's post-petition statutory interest Claim. *Benjamin Coal* 978 F.2d at 827; and

- The Plan binds the IRS, and it is the sole source of treatment for the IRS's Claims, specifically its post-petition interest Claim. 11 U.S.C. § 1141(a); Confirmation Order at ¶ I.E.1; *Montgomery Ward*, 306 B.R. at 494.

Indeed, there is no functional difference between the defensive uses of set-off, offset, and equitable recoupment in a post-confirmation setting when such defenses were not raised prior to plan confirmation.   Confirmation Order at ¶ VI.A.1; *Kings Terrace*, 184 B.R. at 202; Fed. R. Civ. P. 13 (set-off and recoupment are forms of counterclaims); *see also* 3 MOORE'S FEDERAL PRACTICE §§ 13.11, 13.31 (Matthew Bender 3rd ed. 2018) (same); *Sanders Confectionery Products, Inc., v. Heller Financial, Inc.*, 973 F.2d 474, 483 (6th Cir. 1992) (creditors' counterclaims precluded if not raised prior to plan confirmation).   Therefore, section 1141(d)(1) discharges the IRS's equitable recoupment defense "under the circumstances" of this matter for the same reasons that the Third Circuit held in *Continental Airlines* that set-off as an affirmative defense was "extinguished" by the discharge. *Cont'l Airlines, 134 F.3d at 542.*

## CONCLUSION

Grace respectfully submits that for the foregoing reasons this Court should deny the Government's appeal and sustain the Bankruptcy Court's findings of fact and ruling that Plan confirmation on these facts precludes the IRS from raising the defense of equitable recoupment.

**[remainder of page left intentionally blank]**

June 1, 2018                                    Respectfully submitted

                                               _/s/ James E. O'Neill_
                                               _____

Roger J. Higgins                               Laura Davis Jones (Bar No. 2436)
THE LAW OFFICES OF ROGER HIGGINS,              James E. O'Neill (Bar No. 4042)
LLC                                            PACHULSKI STANG ZIEHL & JONES LLP
1 North Bishop Street                          919 North Market Street, 17th Floor
Suite 14                                       P.O. Box 8705
Chicago, IL 60607-1823                         Wilmington, DE  19899-8705
(312) 666-0431                                 (302) 652-4100

Adam C. Paul, P.C.
John Donley, P.C.
Natalie Keller
KIRKLAND & ELLIS LLP
300 North LaSalle Street
Chicago, IL 60654
(312) 862-2000


                        _Counsel for Appellee_